## Chicago & Alton Railway Company v. J. M. Gwin.

1. PASSENGER—*when expulsion from train unlawful.* Held, from the facts in this case, that the expulsion of the passenger was unlawful.

Action in case. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed March 20, 1906.

KERRICK & BRACKEN, for appellant; F. S. WINSTON, of counsel.

LIVINGSTON & BACH, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by appellee against appellant for the recovery of damages resulting from the alleged unlawful ejection of appellee from one of appellant's trains and for false arrest. A trial of the cause by jury resulted in a judgment in favor of the plaintiff for the sum of $500, to reverse which the defendant appeals.

The declaration avers that on August 28, 1904, plaintiff purchased a first-class ticket over defendant's railroad from Chicago to St. Louis; that on said date he boarded one of its regular trains at Chicago and delivered his ticket to the conductor of said train, who when near Bloomington, demanded that he pay fare from Bloomington to St. Louis; that upon plaintiff's refusal to comply with such demand, the conductor ordered two police officers at Bloomington to

eject plaintiff from the train; that by the direction of the conductor, said officers laid hold of plaintiff and arrested him; that he was unlawfully and wantonly ejected from the train at said point; that upon the train with the conductor was the general passenger agent of defendant, who was present when plaintiff was ejected and knew and acquiesced in the unlawful acts of the conductor; that plaintiff at all times, while on the train, conducted himself in a well-behaved and proper manner; that said ejection was unlawful, wilful and wanton and done to harass and injure plaintiff, etc. In addition to the general issue, two special pleas were filed, demurrers to which were sustained by the court.

The evidence adduced by appellee to sustain the averments of the declaration, tended to establish the following facts: On August 28, 1904, appellee, a resident of Baltimore, Maryland, accompanied by his wife, child and brother, boarded one of appellant's trains at Chicago. Appellee's wife held a regular ticket, and appellee what is called an interchangeable mileage ticket, consisting of a regular ticket to which was attached a passenger's credit check and a conductor's check, upon both of which appeared blank spaces for the signature of appellee, the number of the credential, the amount paid for the ticket, the place of purchase and of destination. When the conductor collected said ticket, after leaving Chicago, appellee signed his name to both checks. The conductor retained the ticket and conductor's check and returned the passenger's credit check to appellee, who replaced the same in his mileage book. At the same time the conductor placed in the band of appellee's hat a card-board check containing the words, "Passengers will please keep this check in sight." After the conductor had left the car, appellee took the check from his hat band and threw the same upon the floor. Shortly before the train reached Joliet, the conductor again demanded appellee's ticket and was informed by appellee that he had given it to him. The conductor then inquired where appellee's hat check was and was told by appellee that he had thrown it away. The conductor then told him that he must pay his

fare again or produce the hat check or some other evidence
that he was entitled to passage. Appellee showed him his
conductor's receipt for his mileage ticket and the ticket held
by his wife. Whereupon the conductor told him that he
would be compelled to show his mileage receipt and his
wife's ticket at every station, which appellee expressed his
willingness to do. A heated altercation then took place be-
tween the parties, after which appellee went to the smoker
car, where his brother was seated. At every stop of the
train thereafter he exhibited his wife's ticket and credentials
to the conductor, as he had been requested. After the train
left Dwight, when the conductor passed through the smoking
car, appellee complained to him of the ill-treatment he
claimed he had received and stated that he would report the
same to the general passenger agent of the road. The con-
ductor then left the car and upon his return stated to appellee
that unless he produced the hat check or paid his fare he
would be ejected from the train, to which appellee responded
that he had thrown the hat check away and was unable to find
it, and again expressed his willingness to show his creden-
tials at every station. Shortly thereafter, George J. Charl-
ton, the general passenger agent of appellant, who was upon
the train, came into the car, and inquired what the difficulty
was, whereupon appellee exhibited to him his credential book
and stated substantially what had occurred. Charlton re-
plied that the hat check must be procured or the fare again
paid. When the train arrived at Chenoa, the conductor, at
the direction of Charlton, telegraphed to the agent at Bloom-
ington to have police officers at the station when the train
arrived. When the train reached that city, two police offi-
cers were at the station, who were taken into the car where
appellee was sitting, by the conductor, and by him directed
to arrest appellee. Appellee stated that he would make
no resistance, but would leave the train under protest. After
appellee and his wife and child had left the train they were
taken toward a patrol wagon which was standing near the
platform. Appellee protested against his wife and child
being placed in the patrol wagon, whereupon one of the

police officers telephoned to the police station for instructions and was told by the chief of police to do whatever Mr. Charlton directed. The police officers then inquired of Charlton what charge was against appellee and his companions, to which Charlton replied that he did not care to have them taken to the police station, but that he wanted them held until the train had departed. When the train had gone the police officers informed appellee and his family that they were at liberty.

The evidence upon several material points is close and seriously in conflict. Unless the same can be said to be manifestly against the weight of the evidence, it is well settled that it is not our duty to interfere with the findings of the jury upon questions of fact. We have carefully read the record and are unable to say that the jury, who saw and heard the witnesses and are the sole judges of their credibility and the weight to be given to their testimony, were unwarranted in believing appellee's version as to what took place in preference to that of the conductor.

It will be unnecessary for us to consider or determine whether the alleged rule of the company as to hat checks was reasonable, whether appellee had notice of the same, or whether appellee was bound thereby, and in case he disregarded the same, could be legally expelled from the train; for the reason that if the jury found that the conductor told appellee that he would have to exhibit his credentials at each station, and that appellee acquiesced in and complied with such requirement when requested, the right to enforce such rule was thereby waived by appellant's servant, the conductor. It is not controverted that appellee had a ticket or that he delivered the same to the conductor upon demand. The only justification claimed for expelling him from the train was his failure to retain the hat check, as provided by the rule of appellant. If the right to insist upon compliance with such rule was waived, the expulsion of appellee was clearly unjustifiable and unlawful and appellant must respond in damages. Whether appellee was lawfully entitled to remain upon the train or not, the public indignity to which

he was subjected was likewise without justification, either in law or reason. It is not denied that he was arrested without a warrant by uniformed police officers, and unlawfully detained by them at a public railway station in a populous city in the vicinity of a police patrol wagon apparently there for his reception. And this, too, in the presence of his wife and child. The damages assessed seem to us to be inadequate, rather than excessive, as contended.

Appellant complains that the court erred in sustaining the demurrer to its special pleas. The court permitted appellant to introduce full evidence as to many of the facts averred therein. The evidence claimed to have been improperly excluded by the court was in reference to the necessity for, and reasonableness of the so-called hat-band rule, which questions, under the views herein expressed, were immaterial to be considered by the jury. We have examined the instructions carefully and find no error in the rulings of the court thereon, which we consider prejudicial to appellant.

The judgment will accordingly be affirmed.

*Affirmed.*